THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SAIDI KAFO,                           )
                                      )
       Petitioner,                    )
                                      )   Case No. 05 C 0701
       v.                             )
                                      )
UNITED STATES OF AMERICA,             )
                                      )
       Respondent.                    )

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

The present matter is before the Court on remand from the Seventh Circuit to determine whether Petitioner Saidi Kafo requested his trial counsel to appeal his sentence at the conclusion of his criminal proceedings before the Court. *See Kafo v. United States,* 467 F.3d 1063 (7th Cir. 2006). On remand, Kafo filed an amended motion under 28 U.S.C. § 2255 with an attached affidavit averring that he had asked his attorney to appeal his sentence and his attorney failed to do so. The Court subsequently granted Kafo an evidentiary hearing. Based on the testimony and documents submitted at the evidentiary hearing, the Court concludes that Kafo did not request his attorney to appeal his sentence. Therefore, the Court denies Kafo's amended motion pursuant to 28 U.S.C. § 2255.

**BACKGROUND**

**I.      Kafo's Original Section 2255 Motion**

On November 14, 2003, Kafo pleaded guilty to three counts of uttering a forged and counterfeit security, in violation of 18 U.S.C. § 513(a). On March 25, 2004, the Court sentenced Kafo to 48 months incarceration. Kafo never directly appealed his sentence. Instead, on

February 4, 2005 – almost a year later – Kafo filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Kafo then filed a motion to amend his Section 2255 motion on April 12, 2005, which the Court granted. Construing Kafo's *pro se* Section 2255 motion liberally, *see Marshall v. Knight,* 445 F.3d 965, 969 (7th Cir. 2006), his amended petition asserted the following claims: (1) his trial counsel was constitutionally ineffective for failing to file an appeal after Kafo requested him to do so; and (2) his sentence was invalid based on *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

Specifically, Kafo asserted that his sentence was invalid because a jury did not determine – beyond a reasonable doubt – the facts that led to his sentencing guideline range. *See United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). In *Booker*, the Supreme Court concluded that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker,* 543 U.S. at 244. The Seventh Circuit, however, concluded that *Booker* is not retroactive on collateral review and thus "*Booker* does not apply retroactively to criminal cases that became final before its release on January 12, 2005." *McReynolds v. United States,* 397 F.3d 479, 481 (7th Cir. 2005). Because Kafo's conviction and sentence became final before the *Booker* decision, the Court concluded that *Booker* could not form the basis for Section 2255 relief under the circumstances.

Next, Kafo claimed that his trial attorney provided constitutionally ineffective assistance of counsel because he failed to appeal Kafo's sentence even though Kafo had requested him to do so. Indeed, the Seventh Circuit has held that an attorney's "failure to take an appeal, despite

the defendant's request, is ineffective assistance without regard to the probability of success on appeal." *Castellanos v. United States,* 26 F.3d 717, 719 (7th Cir. 1994); *see also Roe v. Flores-Ortega,* 528 U.S. 470, 477, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). The Court, however, denied Kafo's *Castellanos* claim without an evidentiary hearing because Kafo failed to present an affidavit swearing that he had expressed his desire to appeal to his trial counsel. Further, Kafo did not sign his Section 2255 motion under oath. The Court also denied Kafo's certificate of appealabilty. *See* 28 U.S.C. § 2253(c)(2).

## II.  Kafo's Appeal

The Seventh Circuit granted Kafo's certificate of appealability on the issue of whether counsel was constitutionally ineffective for failing to file an appeal. *See Kafo*, 467 F.3d at 1065. The Seventh Circuit reviewed the Court's decision denying Kafo's request for an evidentiary hearing concluding that the Court did not abuse its discretion because Kafo failed to present a "specific affidavit which shows that the petitioner had actual proof of the allegations beyond mere unsupported assertions." *Id.* at 1067 (citation omitted). The Seventh Circuit, however, concluded that the better practice – as suggested by the Advisory Committee Notes to the 2004 Amendments to Rule 2 of the Rules Governing Section 2255 Proceedings for the United States District Courts – was to instruct Kafo to amend his Section 2255 motion by submitting his motion under oath or by attaching an affidavit. *Id.* at 1070. Accordingly, the Seventh Circuit vacated the Court's decision "in order to permit that court to afford the petitioner an adequate opportunity to submit a verified version of the amended complaint or a supplemental affidavit." *Id.* at 1071.

On March 7, 2007, Kafo, by counsel, submitted an amended motion under Section 2255 along with a signed and sworn affidavit. On May 11 and 15, 2007, the Court held an evidentiary hearing to determine whether Kafo had requested that his trial attorney appeal his sentence.

## LEGAL STANDARD

A district court must grant a Section 2255 motion to vacate, set aside or correct a sentence under Section 2255 when a petitioner establishes "that the district court sentenced him in violation of the Constitution or laws of the United States or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." *Hays v. United States*, 397 F.3d 564, 566-67 (7th Cir. 2005) (citations and quotations omitted). It is well-established that "a motion under § 2255, like a petition for a writ of habeas corpus, is not a proceeding in the original criminal prosecution but an independent civil suit." *Heflin v. United States,* 358 U.S. 415, 418 n.7, 79 S.Ct. 451, 453, 3 L.Ed 407 (1959) (internal citation omitted); *McCartney v. United States,* 311 F.2d 475, 476 (7th Cir. 1963) ("proceedings [] under Section 2255 are not a part of an original criminal action but are an independent and collateral inquiry into the validity of the conviction."). Accordingly, "[t]o sustain his motion made under [Section] 2255, the burden of proof was on the [petitioner] to establish by a preponderance of the evidence that he had been deprived of some right under the Constitution." *See Hearn v. United States,* 194 F.2d 647, 649 (7th Cir. 1952).

## ANALYSIS

Counsel's failure to file a notice of appeal despite a criminal defendant's request to do so is constitutionally ineffective assistance of counsel without regard to the probability of the

appeal's success. *Castellanos*, 26 F.3d at 719. In reaching this conclusion, the *Castellanos* court explained:

> "Request" is an important ingredient in this formula. A lawyer need not appeal unless the client wants to pursue that avenue. Moreover, as we held in *United States v. Mosley,* 967 F.2d 242 (7th Cir. 1992), the Constitution does not require a lawyer to advise the client of the right to appeal. That duty rests principally on the judge – and even if both judge and counsel forget to provide this advice, most defendants know about the possibility of appeal and cannot complain if they are not furnished redundant information. "Counsel will not be found ineffective *per se* for failure to appeal an appealable judgment." *Oliver v. United States,* 961 F.2d 1339, 1342 (7th Cir. 1992). Only a failure to appeal a judgment that the defendant desires to appeal is problematic.

*Id.* Because a defendant cannot prove prejudice under the *Strickland* standard if there is no counsel in the first instance, the *Castellanos* court held that "[i]f the defendant told his lawyer to appeal, and the lawyer dropped the ball, then the defendant has been deprived, not of effective assistance of counsel, but of *any* assistance of counsel on appeal. Abandonment is a *per se* violation of the sixth amendment." *Castellanos,* 26 F.3d at 718 (citing *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)). Again, the issue on remand is whether Kafo told his attorney he wanted to appeal his sentence.

**I.     Findings of Fact**

During the evidentiary hearing, Petitioner Saidi Kafo called two witnesses: (1) Kent Carlson, his trial attorney; and (2) himself. The Court closely observed the demeanor of these witnesses during their testimony and bases its credibility determinations in part on these observations. In addition, both parties introduced documents into evidence, including Kafo's change of plea and sentencing transcripts, the Pre-sentence Investigation report ("PSI"), the final judgment in Kafo's criminal case, and correspondence.

### A. Kent Carlson's Evidentiary Testimony

At the evidentiary hearing, Kafo's trial attorney, Kent Carlson, testified that he represented Kafo in the underlying criminal matter, but was not Kafo's first attorney. In fact, Carlson was Kafo's third attorney during the trial court proceedings. Carlson testified that he has been a criminal defense attorney for approximately 25 years and accepted an appointment from the Federal Defender's Office to represent Kafo. Carlson testified that he has represented hundreds of clients during his legal career and that his practice is primarily criminal defense representation in federal court.

#### 1. Change of Plea

Carlson also testified that Kafo accepted a blind plea agreement in this matter after rejecting a draft of a plea agreement proposed by the government. At the time Kafo pleaded guilty, Kafo and the government disagreed about the relevant conduct involved and its impact on the sentencing guidelines. The relevant conduct impacted the total loss figures in the guideline calculation. Carlson testified that he explained to Kafo that if Kafo denied some of the relevant conduct involved and the Court determined that his testimony was materially false, Kafo could lose the acceptance of responsibility reduction in his sentencing guidelines calculation. Carlson also explained to Kafo that the Court also could enhance his sentencing guideline by two levels for obstruction of justice based on any materially false testimony.

Next, Carlson testified that the probation officer prepared a PSI that agreed with the government's position on Kafo's relevant conduct. Carlson stated that he discussed the PSI with Kafo prior to sentencing, and it was unclear whether Kafo would acknowledge at sentencing the full loss of the relevant conduct. While discussing the PSI with Kafo, Carlson told Kafo at

6

"great length" how the government would try to prove the relevant conduct and what Kafo would have to do to contest the government's calculation as to the relevant conduct. Carlson then testified that Kafo and he reached the decision that Kafo did not want to risk a potential five-level swing in his sentencing guideline range – namely, losing the three-level acceptance of responsibility reduction and gaining a two-level obstruction of justice enhancement – by contesting the government's calculation as to relevant conduct. A five-level increase would greatly impact Kafo's potential sentence.

### 2. Sentencing

Thereafter, Carlson testified that before Kafo's sentencing hearing on March 25, 2004, Kafo and he agreed that Kafo would not contest the intended loss and actual loss figures as reflected in the PSI. Carlson further testified that if Kafo had intended to challenge the relevant conduct in the PSI's sentencing guidelines calculations, Carlson would have filed written objections to the PSI with the Court. Moreover, Carlson stated that he and Kafo strategically did not file such written objections because they did not want to risk losing the three-level acceptance of responsibility reduction. Likewise, Carlson testified that Kafo never requested that he contest the relevant conduct or sentencing guidelines calculations in the PSI. Indeed, at his sentencing hearing, Kafo unequivocally told the Court that he had reviewed the PSI with his attorney and did not have any comments, corrections, or objections to it. (Gov't Ex. 1, Sent. Tr., at 8, lines 13-20.) After the Court sentenced Kafo, the Court advised him that if he wanted to appeal the sentenced imposed, he had to file a notice of appeal within ten days. (*Id.* at 14.)

### 3. Discussions After Sentencing

Carlson testified that immediately after the Court sentenced Kafo to 48 months imprisonment, Carlson explained Kafo's appellate rights to him while they were in the United States Marshal's lockup. At that time, Carlson told Kafo that because the Court gave him the three-level guideline reduction for acceptance of responsibility and he did not object to the PSI in advance of sentencing, no viable issues existed for appeal. Carlson testified that Kafo agreed with him, and Carlson told him that he therefore would not file a notice of appeal on Kafo's behalf. Similarly, Carlson testified that he discussed Kafo's appellate rights with him a few days after the sentencing hearing on the phone. During that call, Carlson said that Kafo did not ask him to file a notice of appeal. Carlson stated that he had no further discussions with Kafo concerning an appeal after that phone conversation.

In addition, Carlson testified that he would have filed a notice of appeal if Kafo had requested him to do so, and that filing a notice of appeal is not a difficult task and only takes a few minutes to complete. Carlson also stated that it was the client's decision to appeal, and not his, so that if a client informs him that they want to appeal – whether he agrees or not – it is his obligation to file the notice of appeal. If Carlson disagrees with the decision to appeal, he can seek to withdraw after filing the notice of appeal. In fact, Carlson explained that he has previously filed notices of appeal and then immediately moved to withdraw when he has disagreed with his clients over the merits of the appeal.

The Court is persuaded by Carlson's testimony and is convinced of his credibility and reliability based on his sincere demeanor and manner while testifying, the nature of his testimony, and the consistency of his testimony with the occurrences in court and the evidence.

Carlson is an experienced criminal defense attorney with no motive to testify to anything other than the truth. Carlson did not display any bias or prejudice against Kafo. Simply put, the Court is persuaded that he was truthful.

      **B.**      **Saidi Kafo's Evidentiary Testimony**

            **1.**      **Direct Examination**

Kafo testified about the draft plea agreement he reviewed and its effect on his decision to plead guilty. Specifically, he testified that his second trial attorney – John Murphy – reviewed the draft written plea agreement with him. Kafo said that he did not sign the draft plea agreement because the relevant conduct included in the agreement held him responsible for more conduct than he actually had caused. Also, Kafo testified that once Carlson became his lawyer, he told Carlson that he did not want to sign the written plea agreement based on the relevant conduct.

After Carlson started representing him, Kafo testified that he sent Carlson a letter that he was willing to plead guilty to one count of the nine count indictment for a level 5 offense with a sentencing guideline range of 0 to 6 months with time served. (Pet. Ex. 3, Kafo Sept. 26, 2003, letter.) Thereafter, Kafo testified that he told Carlson that he wanted to proceed to trial. Kafo testified that Carlson and the Assistant United States Attorney discussed his case, and Carlson told him that the government wanted him to plead guilty to three counts of the indictment. According to Kafo, he then decided to plead guilty to three counts of the nine count indictment. Moreover, Kafo testified that Carlson showed him the sentencing guidelines and told Kafo that he could expect a sentencing guideline range of 0 to 6 months incarceration if he pleaded guilty

9

to the three counts. On November 14, 2003, Kafo pleaded guilty to three counts of the indictment.

Kafo testified that after the change of plea hearing he met with Carlson to review his PSI. At that time, he told Carlson that he was supposed to receive a sentence of 0 to 6 months imprisonment and not the amount in the PSI which reflected relevant conduct. Kafo then explained to Carlson that the relevant conduct was the reason he did not want to sign the written plea agreement in the first place. Kafo further testified that he wanted Carlson to object to the PSI, but that Carlson failed to do so. According to Kafo, Carlson told him that if he challenged the relevant conduct, he would receive a sentence of nine or ten years in prison.

Furthermore, Kafo testified that before the sentencing hearing, Carlson told him not to say anything if the Court asked him questions because the Court would take away his acceptance of responsibility reduction. Accordingly, Kafo stated that he followed Carlson's advice not to object to the PSI, and the Court sentenced him to 48 months imprisonment. Kafo testified that he was not happy with his sentence because he told Carlson to do something to challenge the relevant conduct. After the sentencing hearing, Kafo testified that while he waited in the holding cell, he told Carlson to file an appeal and Carlson answered "okay." Kafo further asked Carlson to visit him at the Metropolitan Correctional Center ("MCC").

According to Kafo, Carlson never visited him at the MCC, and Kafo therefore called him two or three days after the sentencing hearing about the appeal. Kafo testified that during this phone conversation Carlson told him that he would "take care of everything." Further, Kafo testified that he did not speak to Carlson again until approximately May 2004 after he arrived at the prison facility in Allenwood, Pennsylvania. Kafo testified that once he got to Allenwood he

10

wrote Carlson a letter to follow-up their the conversations. (Pet. Ex. 11, Kafo June 10, 2004, letter.) In this letter, Kafo explained that his appeal was important because there was no reason for "the enhancement which I was given." (*Id*.) Carlson testified, however, that he had never seen the June 10, 2004, letter. Kafo also testified that although he attempted to call Carlson in July 2004, Carlson never answered the phone or returned his call. He allegedly told Carlson's secretary to leave a message with Carlson about his appeal, but Carlson never called him back. Moreover, Kafo testified that he called Carlson in August 2004. According to Kafo, Carlson told Kafo to call him back, but when Kafo did, no one answered the phone. Kafo testified that he never called Carlson again. Instead, he prepared his motion under 28 U.S.C. § 2255.

2. **Cross-Examination**

On cross-examination, the government effectively impeached Kafo with his convictions pursuant to Federal Rule of Evidence 609, including an August 2000 conviction for deceptive practices and a May 2000 conviction for theft of property by deception. Both of these convictions involved dishonesty and undermined Kafo's credibility and the truthfulness of his testimony.

Further on cross-examination, Kafo admitted that he understood that he had pleaded guilty to only three counts of the indictment and that he was responsible for more crimes than the ones to which he had pleaded guilty. Kafo admitted that Carlson had reviewed and discussed the sentencing guidelines with him before he pleaded guilty. In addition, Kafo admitted that at his change of plea hearing the Court explained that it was ultimately the Court's decision to determine his sentence, that he faced a statutory maximum of 30 years imprisonment, and that the sentencing guidelines governed his sentence. Kafo also acknowledged that the Court advised

him that the government was going to submit an intended and actual loss of between a million and $2.5 million dollars. Further, he admitted that if the Court found that the higher loss amount applied, his guideline level would have been higher than the guideline level that he and Carlson had advocated. Indeed, the Court explained to Kafo at his change of plea hearing that the parties disputed the sentencing guidelines and it would be up to the Court at the time of sentencing to determine the appropriate sentencing guideline range. (Pet. Ex. 5, Plea Hr'g, at 17-18.) Kafo further admitted that if the Court found that he had not accepted responsibility for his actions, his guideline level would have been higher, and thus his sentence would have been higher.

In addition, Kafo testified that prior to sentencing he reviewed his PSI, and acknowledged that the probation officer and the government agreed on the relevant conduct involved. Kafo admitted that he wanted the three-level reduction for acceptance of responsibility because it resulted in a lower guideline range and sentence. Kafo also acknowledged on cross-examination that Carlson had explained to him that if he did not agree to the relevant conduct amount, he risked losing the acceptance of responsibility reduction. He also admitted that he did not object to his PSI at his sentencing hearing. Indeed, the Court asked him during his sentencing hearing if he had received and reviewed the PSI and Kafo confirmed that he had received it. (Gov't Ex. 1, Sent. Tr., at 8, lines 13-20.) The Court further asked him if he had any objections or corrections and he unequivocally said no. (*Id.*)

Moreover, the government asked Kafo questions on cross-examination about his original Section 2255 motion. Kafo admitted that in his original Section 2255 motion filed on February 4, 2005, he did not raise his ineffective assistance of counsel claim based on Carlson's alleged failure to file an appeal, but merely mentioned that he asked his counsel to appeal his sentence.

12

(05 C 0701, R.1-2, Section 2255 Motion, at 1 ("The defendant did not file any direct appeal even though he asked his attorney to do such.").) Kafo then admitted that it was not until his April 12, 2005 amended Section 2255 motion – approximately two months after his original Section 2255 motion – that he set forth his ineffective assistance of counsel argument based on Carlson's alleged failure to file an appeal. (Gov't Ex. 4, Motion to Amend Section 2255 motion.)

Furthermore, Kafo's motion to amend his Section 2255 petition filed on April 12, 2005, stated that a "[f]ew weeks after sentence [sic], petitioner again called counsel to find out the situation with his appeal, but counsel responded by telling petitioner to file the appeal himself." (Gov.'t Ex. 4, Motion to Amend 2255 Petition, at 2.) When Kafo testified at the evidentiary hearing, however, his version of the events had changed. Specifically, he testified that Carlson had told him that he would "take care of everything" regarding his appeal. Also, in his affidavit in support of his Section 2255 motion on remand, Kafo never mentioned the telephone conversation in which Carlson allegedly told him to file his own appeal. (*See* Gov.'t Ex. 5, Kafo Aff.)

## II.     Conclusions of Law

Kafo's testimony lacked credibility based on his demeanor, the content of his testimony, the many inconsistencies in his testimony, and the inconsistencies between his testimony and the documentary evidence. Kafo's argument that he relied on his attorney's alleged representation that the Court would sentence him to 0 to 6 months in prison is contrasted by the Court's clear admonishment at Kafo's change of plea hearing that the Court would determine Kafo's final guideline calculation and Kafo's sentence in this matter. (Pet. Ex. 5, Change of Plea Hr'g, at 14, 16-17.) In fact, Kafo admitted this on cross-examination. Kafo further admitted that Carlson

met with him to discuss the sentencing guidelines, his PSI, and the ramifications of challenging the relevant conduct, as supported by Carlson's testimony and Kafo's sentencing hearing testimony. In sum, Kafo's argument that he was anticipating a sentence of 0 to 6 months imprisonment in light of the evidence presented at the hearing is simply not credible. His testimony that he objected to the guideline calculation even though he expressly told the Court otherwise is also strained. Further, Kafo's testimony that a few days after his sentencing hearing Carlson told him he would take care of everything concerning his appeal is a different version of the facts from Kafo's April 2005 motion to amend his Section 2255 petition in which Kafo stated that Carlson told him to file the appeal himself. Notably, Kafo had a motivation to lie because if the Court were to grant his Section 2255 motion, Kafo would be entitled to appeal his sentence. *See Kafo,* 467 F.3d at 1067 n.7 (citing *Castellanos*, 26 F.3d at 720). Based on Kafo's inconsistencies, the Court cannot accept Kafo's evidentiary testimony as true, especially in light of the credible testimony from his trial attorney, Kent Carlson.

Accordingly, Kafo has failed in his burden of establishing that he requested his attorney to file a notice of appeal by a preponderance of evidence. The Court relies on Carlson's and Kafo's hearing testimony – as well as the change of plea and sentencing transcripts and documentary evidence submitted at the hearing – in concluding that Kafo did not request Carlson to file an appeal at any time. Because Kafo has failed in his burden, the Court denies Kafo's amended motion under Section 2255 filed on March 7, 2007.

## **CONCLUSION**

The Court thus denies Kafo's amended motion pursuant to 28 U.S.C. § 2255.

Dated: May 29, 2007

                                      **ENTERED**

_____
**AMY J. ST. EVE**
**United States District Court Judge**